ROSSFORD EXEMPTED VILLAGE SCHOOL DISTRICT, APPELLEE, *v.* STATE BOARD OF EDUCATION, APPELLANT, ET AL.

[Cite as Rossford Exempted Village School Dist. *v.* State Bd. of Edn. (1989), 45 Ohio St. 3d 356.]

(No. 88-1243—Submitted May 10, 1989—Decided September 27, 1989.)

*Kolb, Kolb & Kolb* and *Matt Kolb,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Lauren M. Ross,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A., Robert T. Baker* and *Kimball H. Carey,* urging affirmance for *amicus curiae,* Ohio School Boards Association.

MOYER, C.J. The issue in this case is whether an order issued by the State Board of Education approving the transfer of certain school district territory pursuant to R.C. 3311.24 may be appealed to the court of common pleas pursuant to R.C. 119.12. For the reasons that follow, we hold that such an order may be appealed.

Sections 3 and 4, Article VI of the Ohio Constitution give the General Assembly authority to create a public school system, boards of education, and the State Board of Education. See *State, ex rel. Core,* v. *Green* (1953), 160 Ohio St. 175, 51 O.O. 442, 115 N.E. 2d 157. Pursuant to this authority, the General Assembly enacted R.C. Chapter 3301, establishing the Department of Education and defining the depart-

ment's scope of duties and guidelines for managing the public education system in Ohio.

Unlike some other state agencies,[2] pursuant to R.C. 3301.13, the Department of Education is expressly included among the agencies that must comply with R.C. Chapter 119. This section provides in relevant part that "[t]he department of education shall be subject to all provisions of law pertaining to departments, offices, or institutions established for the exercise of any function of the state government * * *. In the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards[,] the department of education, and any officer or agency therein, shall be subject to Chapter 119. of the Revised Code. * * *" This language is consistent with the definition of "agency" found in R.C. 119.01(A): " 'Agency' means * * * the functions of any administrative or executive officer, department, division, bureau, board, or commission of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code * * *."

Among the powers delegated by the General Assembly to the state board is the authority to issue an order approving or disapproving the transfer of territory from one school district to another school district. In determining the appealability of an order approving a transfer of territory pursuant to R.C. 3311.24, we will review the mechanism involved in such approvals, as well as the method used to transfer territory pursuant to R.C. 3311.06.

At the heart of this question is the distinction between the reviewability of proceedings that are quasi-judicial in nature as opposed to agency action which is quasi-legislative in nature. In *M. J. Kelley Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150, 61 O.O. 2d 394, 290 N.E. 2d 562, at paragraph one of the syllabus, we stated: "The review of proceedings of administrative officers and agencies, authorized by Section 4(B), Article IV of the Ohio Constitution,[3] contemplates quasi-judicial proceedings only, and administrative actions of administrative officers and agencies not resulting from quasi-judicial proceedings are not appealable to the Court of Common Pleas under provisions of R.C. 2506.01. (*Fortner* v.

---

[2] See R.C. 119.01(A), which provides in part:

"* * * Sections 119.01 to 119.13 of the Revised Code do not apply to the public utilities commission, nor do they apply to actions of the superintendent of banks, the superintendent of building and loan associations, the superintendent of credit unions, and the superintendent of insurance * * *. Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication, and to actions of the industrial commission and bureau of workers' compensation under sections 4123.29, 4123.34, 4123.341, 4123.342, 4123.40, 4123.411, 4123.44,

4123.441, 4123.442, and divisions (B), (C), and (E) of section 4131.14 of the Revised Code. Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the bureau of employment services except those relating to the adoption, amendment, or rescission of rules, and those relating to the issuance, suspension, revocation, or cancellation of licenses."

[3] Section 4(B), Article IV of the Ohio Constitution provides:

"The courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

*Thomas* [1970], 22 Ohio St. 2d 13, approved and followed.)" (Footnote added.) Similarly, in *Fortner* v. *Thomas, supra,* at paragraph three of the syllabus, the court found that R.C. 119.11[4] may not be used to obtain judicial review of quasi-legislative proceedings of administrative officers and agencies.

Permitting appeal from a quasi-judicial proceeding is based on the premise that an adjudication has been made by the agency which determines the rights or duties of parties with conflicting interests—in other words, there is a justiciable dispute requiring evaluation and resolution. Implicit in this concept is the exercise of discretion. In *Englewood* v. *Dailey* (1965), 158 Colo. 356, 361, 407 P. 2d 325, 327, the court stated that in deciding whether an act by an administrative agency is quasi-judicial, the " * * * most common test is to determine whether the function under consideration involves the exercise of discretion and requires notice and hearing," all elements being required to constitute a quasi-judicial act. See, also, *Gross* v. *Kenton Structural & Ornamental Iron-works, Inc.* (S.D. Ohio 1984), 581 F. Supp. 390.

R.C. 119.01(D) provides: " 'Adjudication' means the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

R.C. 119.06 provides in part: "* * * No adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 of the Revised Code. * * *"

With these well-established principles before us, we now review this court's previous pronouncements regarding the reviewability of orders issued by the State Board of Education approving transfers of school district territory pursuant to R.C. 3311.06 and 3311.24.

We will first review the case law regarding R.C. 3311.06 in an attempt to clarify the law on the subject.

Transfers of territory pursuant to R.C. 3311.06[5] occur when a political subdivision of the state, such as a city or village, annexes through legislative action territory that contains all or part of another municipality's school district. See *Grandview Hts. Bd. of Edn.* v. *State Bd. of Edn.* (1976), 45 Ohio St. 2d 117, 74 O.O. 2d 215, 341 N.E. 2d 589. In *Grandview,* this court upheld the constitutionality of R.C.

---

[4] R.C. 119.11 was held unconstitutional in *Rankin-Thoman, Inc.* v. *Caldwell* (1975), 42 Ohio St. 2d 436, 71 O.O. 2d 411, 329 N.E. 2d 686, at paragraph two of the syllabus, as violative of Section 4(B), Article IV of the Ohio Constitution since it contemplated judicial review of quasi-legislative proceedings.

[5] R.C. 3311.06 provides in relevant part:
"(C)(1) When all of the territory of a school district is annexed to a city or village, such territory thereby becomes a part of the city school district or the school district of which the village is a part, and the legal title to school property in such territory for school purposes shall be vested in the board of education of the city school district or the school district of which the village is a part.

"(2) When the territory so annexed to a city or village comprises part but not all of the territory of a school district, the said territory becomes part of the said city school district or the school district of which the village is a part only upon approval by the state board of education * * *."

3311.06 in light of the 1955 amendment to the statute (126 Ohio Laws 302) which added a provision that the transfer of a portion of a school district territory would "take effect" only upon approval by the State Board of Education, whereas the prior version of the statute provided for automatic transfer of school district territory when the territory was annexed by a municipality. The Grandview Heights Board of Education challenged the State Board of Education's authority to approve property transfers pursuant to this amendment as being violative of the General Assembly's power to delegate authority since no standards or guidelines were given for the approval process. We upheld the constitutionality of the statute as amended, stating: "R.C. 3311.06 gives the [state] board no guides or standards to use in approving or disapproving the transfer of territory from one school district to another following a partial annexation for municipal purposes. Therefore, the act of the [state] board in approving a transfer of territory pursuant to R.C. 3311.06 is itself a legislative act, which 'takes effect' upon the approval of some other authority than the General Assembly." *Grandview, supra,* at 120, 74 O.O. 2d at 217, 341 N.E. 2d at 592.

In *Marion Bd. of Edn.* v. *Elgin Bd. of Edn.* (1981), 66 Ohio St. 2d 152, 20 O.O. 3d 165, 420 N.E. 2d 990, this court cited the holding in *Grandview* that the approval of a territory transfer pursuant to R.C. 3311.06 is a legislative act, and held that state board disapproval of a transfer, pursuant to R.C. 3311.06, is similarly a legislative act. In addition, citing the holding in *Rankin-Thoman, Inc.* v. *Caldwell* (1975), 42 Ohio St. 2d 436, 71 O.O. 2d 411, 329 N.E. 2d 686, that quasi-legislative proceedings could not be appealed pursuant to R.C. 119.11 (repealed in 1976; see, also, fn. 4), the *Marion* court held that R.C. 119.12 could also not be used as a vehicle to appeal quasi-legislative acts, such as orders issued by the state board pursuant to R.C. 3311.06.

It is clear that because orders approving or disapproving transfers of territory pursuant to R.C. 3311.06 are quasi-legislative, such orders are not appealable under either R.C. 119.12 or 2506.01. See *M. J. Kelley Co.* v. *Cleveland, supra.*

However, the state board may also approve territory transfers pursuant to R.C. 3311.24.[6] Pursuant to this section, the General Assembly has authorized, *inter alia,* qualified electors residing within that portion of a school

---

[6] R.C. 3311.24 states:

"If the board of education of a city school district or of an exempted village school district deems it advisable to transfer territory from such district to an adjoining city or exempted village school district or to a county school district, or if a petition, signed by seventy-five per cent of the qualified electors residing within that portion of a city or exempted village school district proposed to be transferred voting at the last general election, requests such a transfer, the board of education of the district in which such proposal originates shall file such proposal, together with a map

showing the boundaries of the territory proposed to be transferred, with the state board of education prior to the first day of April in any even-numbered year. The state board of education may, if it is advisable, provide for a hearing in any suitable place in any of the school districts affected by such proposed transfer of territory. The state board of education or its representative shall preside at any such hearing.

"Not later than the first day of September the state board of education shall either approve or disapprove a proposed transfer of territory filed with it as provided by this section and shall notify, in writing, the

district proposed to be transferred to petition the State Board of Education to request that the territory in which they reside be transferred to another school district. In such cases, the petition is sent to the State Board of Education after the local school board in which the petition originated has had an opportunity to verify the signatures, see *State, ex rel. Fairview Park Bd. of Edn.,* v. *Rocky River Bd. of Edn.* (1988), 40 Ohio St. 3d 136, 532 N.E. 2d 715, and otherwise comply with R.C. 3311.24. Upon receipt of the petition, the State Board of Education has authority to hold a hearing and thereafter has discretion to either approve or disapprove the transfer request: "* * * The state board of education may, if it is advisable, provide for a hearing in any suitable place in any of the school districts affected by such proposed transfer of territory. * * * Not later than the first day of September the state board of education shall either approve or disapprove a proposed transfer of territory * * *." If the state board's decision is an approval, then the territory is transferred upon fulfillment of the remain-

ing requirements of R.C. 3311.24(A), (B) and (C).

Turning now to the case law relevant to R.C. 3311.24, in a *per curiam* opinion in *State, ex rel. Bell,* v. *Cambridge Bd. of Edn.* (1976), 45 Ohio St. 2d 316, 74 O.O. 2d 475, 345 N.E. 2d 57, this court held that when the State Board of Education approves a transfer of territory from one school district to another, R.C. 3311.24 requires the board of education in which the territory is located to make the transfer. In that case, a petition was submitted to the Cambridge Board of Education requesting that certain territory be transferred from the Cambridge City School District to the Newcomerstown Exempted Village School District. The Cambridge Board of Education submitted the petition to the State Board of Education which conducted a public hearing. Following the hearing, the state board approved the transfer and notified the Cambridge board, which then passed a resolution opposing the transfer. In affirming the issuance of a writ of mandamus compelling the Cambridge board to approve the transfer, this court stated: "Ap-

---

boards of education of the districts affected by such proposed transfer of territory of its decision.

"If the decision of the state board of education is an approval of the proposed transfer of territory then the board of education of the district in which the territory is located shall, within thirty days after receiving the state board of education's decision, adopt a resolution transferring the territory and shall forthwith submit a copy of such resolution to the treasurer of the board of education of the city, exempted village, or county school district to which the territory is transferred. Such transfer shall not be complete however, until:

"(A) A resolution accepting the transfer has been passed by a majority vote of

the full membership of the board of education of the city, exempted village, or county school district to which the territory is transferred;

"(B) An equitable division of the funds and indebtedness between the districts involved has been made by the board of education making the transfer;

"(C) A map showing the boundaries of the territory transferred has been filed, by the board of education accepting the transfer, with the county auditor of each county affected by the transfer.

"When such transfer is complete the legal title of the school property in the territory transferred shall be vested in the board of education of the school district to which the territory is transferred."

pellants [the Cambridge board] challenge further the validity and sufficiency of the petition for the transfer of the land herein. However, the Cambridge board of education, not having availed itself of its right to appeal the state board's decision, pursuant to R.C. 119.12 (see R.C. 3301.13), cannot now challenge that petition in this action." *Bell, supra,* at 318, 74 O.O. 2d at 476, 345 N.E. 2d at 58.

In the case before us, the Court of Appeals for Franklin County, in reversing the trial court's dismissal of Rossford's appeal to the court of common pleas, overruled a previous ruling of the Court of Appeals for Franklin County, *In re Transfer of Territory* (1982), 4 Ohio App. 3d 78, 4 OBR 130, 446 N.E. 2d 493. The court of appeals in *Transfer* concluded that the reference to appealability pursuant to R.C. 119.12 made in the *Bell* decision was dicta, and therefore not controlling. The court of appeals felt constrained to rely on the decision of this court in *Marion.* However, the court of appeals, in the case now before us, overruled the *Transfer* decision to the extent the *Transfer* decision ruled that the *Bell* language at issue was dicta. We agree with the court of appeals that the language at issue in *Bell* was not dicta. In *Bell,* the Cambridge board failed to file an appeal in any court from the state board's order approving the transfer of territory. Instead, the Cambridge board passed a resolution opposing that action. Relators-appellees in *Bell* filed an action in mandamus to compel the Cambridge board to transfer the disputed territory in accordance with the state board's order of approval. This court, on appeal, held that the Cambridge board had, in effect, waived its right to challenge the state board's action because it had failed to appeal.

Implicit in this court's decision in *Bell* is the conclusion that an appeal may be taken from an order of the State Board of Education in an R.C. 3311.24 proceeding.

We agree with the court of appeals in the case before us that an appeal may be taken to the court of common pleas pursuant to R.C. 119.12 from an order of the State Board of Education resulting from a hearing or adjudication pursuant to a request for transfer of territory pursuant to R.C. 3311.24.

Previous decisions of this court support this conclusion. For example, in *State, ex rel. Bratenahl Bd. of Edn., v. State Bd. of Edn.* (1978), 53 Ohio St. 2d 173, 7 O.O. 3d 357, 373 N.E. 2d 1238, the court addressed the issue of when an order from the State Board of Education is appealable. In ruling that the order in issue was not appealable because it was not an "adjudication," the court, once again, relied on the principles set forth in *Fortner* v. *Thomas, supra,* and *M. J. Kelley Co.* v. *Cleveland, supra,* and R.C. 119.06. Thus, where a determination of the rights, duties, privileges, benefits, or legal relationships of specific parties is made by the highest authority of an agency, such order is essentially an adjudication. However, "[n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 to 119.13 * * *." R.C. 119.06.

All of the necessary requirements are present in the instant case. The state board notified the parties that they were entitled to a hearing pursuant to R.C. Chapter 119; a hearing was conducted. Clearly, the order issued by the state board was an adjudication which determines the rights and duties of the property owners and both local school districts. It is an adjudication order resulting from quasi-judicial proceedings and is therefore an appealable order pursuant to R.C. 119.12.

For the reasons stated above, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.